[Cite as *State v. Stewart*, 2024-Ohio-2831.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellant | : | C.A. No. 2023-CA-59 |
| | : | |
| v. | : | Trial Court Case No. 2022 CR 0027 |
| | : | |
| BRAD A. STEWART | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on July 26, 2024

. . . . . . . . . . .

MEGAN A. HAMMOND, Attorney for Appellant

LUCAS W. WILDER, Attorney for Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Plaintiff-Appellant State of Ohio appeals from the trial court's decision granting Defendant-Appellee Brad A. Stewart's motion to return seized money. Stewart's motion requested the return of $1,779.17 in cash seized by the Xenia Police Division incident to Stewart's drug offense arrest in August 2021. The State filed a response in

opposition, arguing that, given the existing and enforceable execution of judgment against Stewart in the amount of $3,145.45 related to his 2022 murder case, any property located within the territorial jurisdiction of Greene County, including the $1,779.17 in cash seized in a different case, was subject to execution to satisfy the judgment. For the reasons outlined below, we reverse the judgment of the trial court.

## I. Background Facts and Procedural History

{¶ 2} In August 2021, Stewart was arrested on an active warrant issued by the Xenia Municipal Court; he was searched incident to his arrest at the scene and again at the jail. The searches yielded suspected cocaine and cash in the amount of $1,779.17. Stewart did not identify the source of the cash but indicated that he was unemployed. On January 20, 2022, he was indicted for one count of possession of cocaine in Greene C.P. No. 2022 CR 27 (the drug offense case).

{¶ 3} On May 26, 2022, Stewart killed Jacob Scoby at the Roundtable Bar in Xenia. On June 3, 2022, he was indicted on 12 felony counts, which included one count of aggravated murder, in Greene C.P. No. 2022 CR 240 (the murder case). He was later convicted by a jury on all counts in the indictment.

{¶ 4} On July 27, 2023, Stewart was sentenced to life in prison without the possibility of parole for aggravated murder, in addition to several shorter prison terms for the other 11 counts. The trial court also imposed financial sanctions against Stewart, including restitution to Scoby's mother in the amount of $1,600, plus a 5% surcharge payable to the Clerk of Courts for the collection and processing of restitution payments and court costs. The trial court ordered that "[c]osts of proceedings are assessed against

the Defendant for which execution is hereby awarded." The clerk of courts then issued a writ of execution in the amount of $3,145.45 against Stewart in Greene County Case No. 2023 CE 119, by which any property located within the territorial jurisdiction of Greene County was subject to execution, including Stewart's "goods and chattels."

{¶ 5} Also on July 27, 2023, the State moved to dismiss the indictment against Stewart in the drug offense case, and the trial court sustained this motion. On September 1, 2023, Stewart filed a motion to return the seized money, requesting that the $1,779.17 previously confiscated in the drug offense case be returned to his attorney and placed into his IOLTA trust account because there was no forfeiture in the drug offense indictment with respect to the cash. In response, the State argued that Stewart was not entitled to return of the seized funds, because judgment had been entered against Stewart for financial sanctions in the murder case and a writ of execution had been issued.

{¶ 6} The trial court granted Stewart's motion to return the seized money and denied the State's request to apply the money to Stewart's financial sanctions in the murder case, pointing out that the State did not seek forfeiture of the cash in the drug offense case. The trial court reasoned that it did not have the authority to apply seized funds to financial sanctions in the absence of properly initiated forfeiture or collection proceedings.

{¶ 7} The State appeals.

## II. Assignment of Error

{¶ 8} The State asserts the following assignment of error:

The trial court erred in granting Appellee's Motion to Return Seized Money.

{¶ 9} In its sole assignment of error, the State contends that, because an outstanding and enforceable execution of judgment had been entered against Stewart in the murder case in the amount of $3,145.45, Stewart's property located within Greene County, including the $1,779.17 in cash, was subject to execution. The State asserts that the Greene County Clerk of Courts properly issued a writ of execution against Stewart for the amount due to satisfy all financial sanctions against him in the murder case. The writ instructed the Greene County Sheriff to levy Stewart's "good and chattels," which the State asserts included the $1,779.17 in cash seized from Stewart incident to his arrest in the drug offense case. In response, Stewart argues that the cash was never forfeited, as the State never took the statutory steps necessary to obtain an order of forfeiture, and thus the money could not be confiscated and applied to his financial sanctions in the murder case. We recently affirmed Stewart's conviction in the murder case in *State v. Stewart*, 2024-Ohio-2735 (2d Dist.). Stewart did not challenge the order requiring him to pay costs or restitution in his appeal of the murder case.

{¶ 10} We agree with the State.

{¶ 11} R.C. 309.08(A) imposes a general duty upon prosecuting attorneys to attempt collection of costs. *State v. Muff*, 2006-Ohio-1516, ¶ 21 (5th Dist.). R.C. 2981.02 allows forfeiture of property to the State pursuant to either the criminal or delinquency process in R.C. 2981.04 or the civil process in R.C. 2981.05. *State v. Jamison*, 2010-Ohio-965, ¶ 9 (2d Dist.). Pursuant to these statutes, the following property is subject to forfeiture to the state or a political subdivision:

(a) Contraband involved in an offense;

(b) Proceeds derived from or acquired through the commission of an offense;

(c) An instrumentality that is used in or intended to be used in the commission or facilitation of any of the following offenses when the use or intended use, consistent with division (B) of this section, is sufficient to warrant forfeiture under this chapter:

(i) A felony;

(ii) A misdemeanor, when forfeiture is specifically authorized by a section of the Revised Code or by a municipal ordinance that creates the offense or sets forth its penalties;

(iii) An attempt to commit, complicity in committing, or a conspiracy to commit an offense of the type described in divisions (A)(3)(a) and (b) of this section.

R.C. 2981.02(A)(1).

{¶ 12} We agree that Stewart's cash in the amount of $1,779.17 was not forfeited. However, the State did not contend that Stewart's money was forfeited, nor was the State required to pursue forfeiture of Stewart's money where, as in this case, the State merely attempted to execute a judgment against Stewart's assets. Stewart's assets included his "goods and chattels," and thus the $1,779.17 in cash.

{¶ 13} A writ of execution is a court order to aid a judgment creditor with collecting monies owed from a judgment debtor. "An execution is a process of a court, issued by its clerk, the court itself, or the county board of revision with jurisdiction pursuant to section

323.66 of the Revised Code, and directed to the sheriff of the county." R.C. 2327.01(B)(1).

There are three kinds of executions:

(1) Against the property of the judgment debtor, including orders of sale or orders to transfer property pursuant to sections 323.28, 323.65 to 323.78, and 5721.19 of the Revised Code;

(2) Against the person of the judgment debtor;

(3) For the delivery of the possession of real property, including real property sold under orders of sale or transferred under orders to transfer property pursuant to sections 323.28, 323.65 to 323.78, and 5721.19 of the Revised Code.

R.C. 2327.02(A).

{¶ 14} R.C. 2949.15 governs writs of execution to pay the costs of prosecution and sets forth the procedure for the clerk of courts to execute a forfeiture of an offender's property to pay such costs. R.C. 2949.15 states:

If a nonindigent person convicted of a felony fails to pay the costs of prosecution pursuant to section 2949.14 of the Revised Code, the clerk of the court of common pleas shall forthwith issue to the sheriff of the county in which the indictment was found, and to the sheriff of any other county in which the person has property, executions against his property for fines and the costs of prosecution, which shall be served and returned within ten days, with the proceedings of such sheriff or the certification that there is no property upon which to levy, indorsed thereon.

When a levy is made upon property under such execution, a writ shall forthwith be issued by the clerk for the sale thereof, and such sheriff shall sell the property and make return thereof, and after paying the costs of conviction, execution, and sale, pay the balance to the person authorized to receive it.

{¶ 15} A criminal defendant is not entitled to notice and an opportunity to be heard before a clerk may issue an execution against property under R.C. 2949.15. *State v. Lykins*, 2017-Ohio-9390, ¶ 32 (4th Dist.); *see also State v. Williams*, 2006-Ohio-5660, ¶ 10 (12th Dist.) ("R.C. 2949.15 does not require a hearing prior to the seizure of a defendant's property for purposes of collecting court-ordered costs of prosecution."); *State v. McDowell*, 2003-Ohio-5352, ¶ 56 (11th Dist.) ("language of R.C. 2949.15 does not require the trial court to hold a hearing or special proceeding prior to the forfeiture of property"); *see also Witherspoon v. Belt*, 177 Ohio St. 1, 3 (1964) (holding that money that an accused has in his possession at the time he is taken into custody and which remains in the possession of law enforcement officers is 'property' within the meaning of R.C. 2949.15 and is subject to execution for the payment of the costs of prosecution).

{¶ 16} Stewart was ordered to pay restitution in the amount of $1,600 in the murder case, a 5% surcharge payable to the clerk for the collection and processing of restitution payments, and court costs. The writ of execution against Stewart in the amount of $3,145.45 represented the total amount due to satisfy all financial sanctions against Stewart in the murder case. The writ specifically instructed the Greene County Sheriff to levy Stewart's "good and chattels," which, as asserted by the State, included the cash

seized from Stewart incident to his arrest in the drug offense case. As in *Williams* and *McDowell*, it was the legal duty of the clerk to issue the writ of execution against Stewart. Additionally, Stewart did not request a stay of execution or request that the trial court set aside, quash, or recall the execution. *See Lykins* at ¶ 30, citing 40 Ohio Jur.3d, Enforcement of Judgments, § 306 ("Returns of execution may be set aside if made through a mistake."); 40 Ohio Jur.3d, Enforcement of Judgments, § 340 ("Since every court has control and supervision over its own process, it has the power to quash, set aside, or recall an execution."). Under these circumstances, we agree that the trial court erred in ordering the return of the $1,779.17 in cash to Stewart. Therefore, we sustain the State assignment of error.

### III. Conclusion

**{¶ 17}** The judgment of the trial court is reversed.

. . . . . . . . . . . . .

WELBAUM, J. and LEWIS, J., concur.